(No. 13737.—Decree affirmed.)

THE PEOPLE *ex rel.* William Stern *et al.* Plaintiffs in Error, *vs.* THE ELGIN, JOLIET AND EASTERN RAILWAY COMPANY *et al.* Defendants in Error.

*Opinion filed June 22, 1921—Rehearing denied October 5, 1921.*

1. MUNICIPAL CORPORATIONS—*vacation of streets must be for the public good.* A city holds its streets in trust for the use and benefit of the public, and the authority to vacate streets cannot be exercised solely for the benefit and use of a private person or corporation, but only where, in the exercise of judgment and discretion, the city council deems that the vacation is for the public good; and if it appears that an ordinance purporting to vacate a street or alley is a mere attempt to alien or otherwise dispose of the public right and interest for a private use the courts will declare the ordinance void.

2. SAME—*courts will hear oral testimony to determine whether vacation ordinance is for a public or private purpose.* The courts will not inquire into the motive of a city council when it exercises the authority of a city within a delegated power; but the action of the council is not conclusive upon the courts, and they may hear oral testimony and look beyond the recitals of the ordinance or declarations of members of the council to determine whether the purpose of a vacation ordinance is public or private.

3. SAME—*a vacation ordinance is not necessarily void because private party will benefit.* The presumption of law is that the public officials constituting a city council discharge their duty to the public, and the courts will not declare a vacation ordinance void merely because some private interest may be served by the vacation, but to render the vacation void it must clearly appear that no consideration of the public interest could have led to the enactment of the ordinance.

4. EASEMENTS—*when travel across lots will not create right of way in public by prescription.* Travel across lots in a subdivision will not ripen into a public right of way by prescription where the use is permissive and the lots are unenclosed.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

COLL MCNAUGHTON, and DAVID E. FIELD, for plaintiffs in error.

KNAPP & CAMPBELL, and DONOVAN & BRAY, (JAMES A. BRAY, and JOHN R. COCHRAN, of counsel,) for defendants in error the Elgin, Joliet and Eastern Railway Company and the Illinois Steel Company.

EDWARD R. NADELHOFFER, for defendant in error the city of Joliet.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The writ of error in this case is prosecuted to obtain a reversal of a decree of the circuit court of Will county dismissing for want of equity the bill and supplemental bill filed in the name of the People of the State of Illinois by Robert W. Martin, State's attorney, on the relation of property owners of the city of Joliet, against the Elgin, Joliet and Eastern Railway Company, the Illinois Steel Company and the city of Joliet, to set aside an ordinance of the city purporting to vacate streets and alleys therein.

The fact alleged which if proved would entitle the complainants to the relief prayed for, was that the vacation was attempted by the ordinance solely for the private corporate purposes of the Illinois Steel Company and the Elgin, Joliet and Eastern Railway Company and in nowise for a public purpose. The answers denied that the ordinance was passed for any private purpose or for the benefit of the steel company and railway company, and alleged that the streets and alleys in question had for a long time prior to the passage of the ordinance ceased to be of any public use or benefit; that the city council was desirous of relieving the public of the expense of maintenance of said streets and alleys, which served no public purpose, and therefore, in the exercise of the power, authority and discretion vested in the city council by law, it was determined to vacate the same, and the ordinance was passed for that reason and no other. A reference was ordered to the master in chancery to take and

report the proofs and the cause was heard by the chancellor upon the evidence, and the bill and supplemental bill were dismissed for want of equity at the cost of the relators, without prejudice to the rights of the relators to sue at law for damages occasioned by the vacation of the streets and alleys.

The present city of Joliet was organized August 5, 1876, under the general Incorporation act and is operated under the commission form of government. It includes the northwest quarter of section 10 in Joliet township, the greater portion of which was platted as Casseday addition and Rolling Mill addition to Joliet. The Illinois Steel Company owns all the land in the two additions lying between the right of way of the Elgin, Joliet and Eastern Railway Company on the east and the Chicago and Alton Railway Company on the west, north of Ohio street, and in addition thereto several hundred acres north of and adjoining the northwest quarter of section 10. On February 16, 1892, all of the streets and alleys in the Casseday and Rolling Mill additions lying between the Chicago and Alton railway on the west, the Elgin, Joliet and Eastern railway on the east, Ohio street on the south and the section line on the north, except Columbia street, were vacated by an ordinance passed by the city council. All of the streets and alleys in both additions existed by virtue of common law dedications. The west line of the right of way of the Elgin, Joliet and Eastern Railway Company crossed the intersection of Herkimer street and Ward avenue diagonally in a northeasterly and southwesterly direction, and by the vacation of 1892 a portion of the intersection of Herkimer street and Ward avenue was vacated. This situation rendered the use of the portion of the intersection not vacated, in going between Herkimer street and Ward avenue, dangerous, and the public then became accustomed to drive across lots between Herkimer street and Ward avenue adjacent to the right of way of the Elgin, Joliet and Eastern railway, and that practice

continued until the ordinance in question was passed, on April 2, 1917. The property between the two railroad rights of way, owned by the Illinois Steel Company, was used by it in connection with its steel plant, located north of Rolling Mill addition. Block 2 of Rolling Mill addition is bounded on the east by Collins street, on the north by Ward avenue, on the west by Herkimer street and on the south by Elwood street. The ordinance described by metes and bounds an area including streets and alleys in this locality. In the early part of the year 1917 the steel company and railway company were desirous of procuring the vacation of these streets and alleys, which they desired to use for the purpose of constructing a roundhouse, railroad terminal facilities and similar uses, and the superintendents of the companies had conferences with the mayor and commissioners urging the city council to make the vacation. Shortly before the passage of the ordinance representatives of the steel company and railway company submitted to the city attorney a draft of an ordinance vacating the portions of the streets and alleys in question which they desired to have passed, which recited that the purpose of the vacation was for the benefit of the steel company and the railway company. The city attorney informed the mayor that such an ordinance would be void because it showed upon its face that the purpose of the ordinance was private and not public, and he prepared the ordinance which was passed, which merely declared the vacation. The representatives of the corporations desiring the vacation were evidently ignorant of the power of the city council and supposed that it could be exercised for their benefit and presented an ordinance which would be void on its face, but the mayor and commissioners were fully advised and informed by the city attorney that an ordinance could not be passed for a private purpose and only in case the public interest would be promoted.

A city holds its streets in trust for the use and benefit of the public and has not the unqualified control and dis-

298—37

position of them. The authority delegated is to lay out, establish, open, alter or vacate streets and to regulate the use of the same, and it is a duty to prevent and remove encroachments or obstructions upon the same. Cities hold title to the streets and alleys for the use of the local and general public and in trust for such use and none other, and they cannot lawfully vacate a street or a portion of a street for the benefit and use of a private person or corporation. (*Smith* v. *McDowell,* 148 Ill. 51; *Field* v. *Barling,* 149 id. 556; *Corcoran* v. *Chicago, Madison and Northern Railroad Co.* id. 291; *People* v. *Corn Products Refining Co.* 286 id. 226; *People* v. *Benson,* 294 id. 236; *People* v. *Atkins,* 295 id. 165.) The city council of Joliet could not vacate the streets and alleys in question, which were held in trust for the public use, except in the exercise of judgment and discretion that the vacation was for the public good. So long as cities act within the delegated power their acts are valid and the courts will not inquire into the motives of the legislative body exercising the authority of the city, but the action of a city council is not conclusive upon the courts and they may hear oral testimony and determine whether the purpose of an ordinance is public or private. If it appears that an ordinance purporting to vacate a street or alley is a mere attempt to alien or otherwise dispose of the public right and interest for a private use, the courts will protect the public right against a disregard and violation of the trust and declare the ordinance void.

The ordinance as passed did not disclose any private purpose, and some of the commissioners testified that in their opinion no public purpose could be served by maintaining the streets and alleys vacated, and that it was for the best interests of the public to vacate the same and thereby relieve the city from expense of maintenance and liability for injuries sustained through the condition of the streets and the defects therein. That, of course, was natural, since there is no responsibility for opinion, and it would not be

expected that participants in the passage of the ordinance would testify to an intentional disregard of duty and violation of the law. The courts will look beyond the recitals of an ordinance or the declarations of members of the city council and examine the results and the surrounding circumstances to determine whether or not the purpose of the ordinance is public, and therefore within the scope of legislative discretion, or private, and therefore without such scope. (*People* v. *Corn Products Refining Co. supra.*) The presumption of law is that the public officials constituting the city council discharge their duty to the public, and the courts will not declare an ordinance void merely because some private interest may be served by the vacation, as in this case. An abutting owner may be greatly benefited by the vacation of a street or alley, and if benefited is naturally desirous of having the vacation, but an ordinance will not be declared void merely because some private interest may be served by the vacation. It must clearly appear that no consideration of public interest could have led to its enactment. *City of Amboy* v. *Illinois Central Railroad Co.* 236 Ill. 236; *People* v. *Atkins, supra; People* v. *Benson, supra; People* v. *Corn Products Refining Co. supra.*

Looking to the facts and circumstances proved to determine whether any consideration of public interest could have led to the passage of the ordinance or whether the purpose was merely private, they were as follows: The vacation in 1892 left short ends of streets, and they had never been improved and no buildings abutted on them. They were never paved, and there were no sidewalks except a flag-stone walk on one side of Herkimer street in front of the Illinois Steel Company's property. No sewer or water pipes were ever laid in the streets and they were not cared for. They had never been regarded as of sufficient importance to the public to justify street lights, water, sewers or any other public conveniences, and they were in bad condition and had been for many years. It is con-

tended that the travel across the lots above referred to created a right of way by prescription in the public, but the use was permissive and the lots uninclosed and the use did not ripen into a public right. The facts and circumstances and the physical conditions and surroundings would prevent a conclusion that there was a violation by the city council of its trust and that the vacation was merely for a private purpose.

The decree is affirmed.                    *Decree affirmed.*