THE WATERLOO CONDENSED MILK COMPANY, Defendant in Error, *vs.* AUGUST VOGES *et al.* Plaintiffs in Error.

*Opinion filed April 24, 1925.*

1. PLATS—*owners of lots have title to center of street in common law plat.* Owners of lots according to a common law plat take title in fee simple to the center of the street dedicated in the plat subject to the public easement in the street, and when the public easement is abandoned or otherwise terminated, the title, with all the incidents of ownership, becomes absolute in the lot owners.

2. EASEMENTS—*owners of lots by common law plat may use the street subject to public easement.* While the public has an easement in the streets in the case of a dedication of streets and alleys by a common law plat, yet the abutting owners may make any use they see fit of the premises to the center of the street that does not interfere with the use of the easement by the public.

3. LIMITATIONS—*adverse possession of lots in common law plat includes possession to center of street.* Where lots are laid out by a common law plat, adverse possession for the statutory period will give title to such adverse holders not only to the lots but also to the center of the street on which the lots abut, and a conveyance of a lot or lots by any party having had such possession conveys title to the middle of the street, subject only to the public easement.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. J. F. GILLHAM, Judge, presiding.

HOMER J. PHILLIPS, and LOUIS P. ZERWECK, for plaintiffs in error.

A. C. BOLLINGER, for defendant in error.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The undisputed facts in this case are as follows: In March, 1857, Conrad Voges subdivided and platted a tract of land and made it an addition to the city of Red Bud, Randolph county. The subdivision contained two blocks, designated as block G and block F, each having six lots, num-

bered from 1 to 6, inclusive, and between the two blocks is a street running east and west of the width of forty feet, known as High street. Block G is on the north side of High street, the south line of that block being the north line of the street, and block F is on the south side of High street, the north line of that block being the south line of the street. The dedication of High street was a common law dedication, accepted by the city of Red Bud. Lots 1 and 2 on the west end of block G and lots 1 and 2 on the west end of block F are each of the width of sixty-two and one-half feet, and they are situated on opposite sides of High street. Defendant in error is in possession and claims to be the owner in fee of lots 1 and 2 in block F, except thirty feet off the east side of lot 2, deeded to the city of Red Bud for street purposes, and also of all that part of High street situated immediately north of its property, of the width of forty feet north and south by ninety-five feet east and west. It claims title to all its property, including the portion of the street forty by ninety-five feet, by virtue of a deed obtained by it shortly before the beginning of this suit. Its grantors were owners in fee and in possession of lots 1 and 2 in block F and lots 1 and 2 in block G, except thirty feet off the east side of each of lots 2 in block F and block G, deeded to the city of Red Bud for street purposes, being owners by adverse possession. Its grantors were also in possession of the west end of High street lying between the property deeded to it in block F and the property of the same width situated north of it in block G, claiming to be the owners of the same by adverse possession and by virtue of a deed from the city of Red Bud made in 1918, in consideration of their having made a deed to the city of the thirty feet off the east side of their property for street purposes. At the time its grantors obtained a deed from the city of Red Bud the city vacated the west ninety-five feet of High street, and defendant in error took possession of such vacated strip and has been in possession,

claiming as owner of the same, up to the making of the deed to it. Its grantors had a regularly connected chain of title by *mesne* conveyances to lots 1 and 2 in block F, the first deed in the chain being made in 1880, and a regularly connected title by *mesne* conveyances to lots 1 and 2 in block G, the first deed in the chain being made in 1866. There is no record of any conveyance from Conrad Voges of any of the four lots. Defendant in error's grantors, and their former grantors, have been in possession, claiming as owners, for more than twenty years prior to the beginning of this suit and have paid all taxes and assessments thereon, and defendant in error was in possession of the premises claimed by it at the beginning of this suit.

Defendant in error filed its bill in the circuit court of Randolph county to quiet title to the property deeded to it as aforesaid, alleging, in substance, the foregoing facts. August Voges, twenty-nine others and the unknown heirs and devisees of Minor Allen, deceased, being the heirs-at-law of Conrad Voges, deceased, were made parties defendant. A default was entered against ten of the defendants. A guardian *ad litem* was appointed for the unknown heirs and devisees of Allen, who answered the bill praying for strict proof thereof. The other defendants answered the bill denying the allegations thereof. The cause was referred to a master in chancery, who reported the evidence and recommended the entry of a decree as prayed, after overruling objections. The court overruled exceptions to the master's report and entered a decree quieting the title in accordance with the prayer of the bill. All the defendants who contested the bill have brought into this court a transcript of the record for review by writ of error.

The facts in the case are not in dispute and are in substance as above stated. The question presented for decision by this court is merely one of law as applied to the facts admitted, and is simply whether or not defendant in error is the legal owner of the portion of High street vacated by

the city of Red Bud, the same being forty by ninety-five feet. The claim of plaintiffs in error is, that as Conrad Voges never sold or transferred lots 1 and 2 in block G and lots 1 and 2 in·block F, the record title to the street between these lots is still in his heirs. They concede that title in fee was obtained by adverse possession by the prior grantors of the defendant in error to all four of the lots, but claim that title by adverse possession did not carry with it title to the vacated portion of the street abutting said lots. Defendant in error, on the other hand, contends that title by adverse possession to the four lots entitled the owners on either side of the street to claim title to the center of the street, and that defendant in error acquired the same right and title to the whole of the street by virtue of its deed.

It is well settled by the decisions of this court that where a tract of land has been subdivided and platted and a common law dedication of the streets made, a conveyance of a lot abutting on a street, made by the party who platted and made the common law dedication of such streets and alleys, conveys to his grantors and their grantees title in fee simple to the center of the street upon which the lot conveyed abuts, subject only to the public easement in the street; that when the public easement in the street is abandoned or. is otherwise terminated, the title to the land on which the street was located but now vacated, with all the incidents of ownership, becomes absolute in the adjacent lot owners. (*Thomsen* v. *McCormick,* 136 Ill. 135; *Hill* v. *Kimball,* 269 id. 398.) While the easement is in existence the abutting owners may make any use they see fit of the premises to the center of the street that does not interfere with the use of the easement by the public. (*Sullivan* v. *Atchison, Topeka and Santa Fe Railway Co.* 251 Ill. 108.) Defendant in error and its grantors, while holding by adverse possession and claiming title to the four lots aforesaid, were also using the street in connection with said lots, and were in possession, legally speaking, of that portion of the street

abutting on their lots, subject to the public easement, and were claiming all rights that could have been asserted by the original plotter of the lots had he been in possession of them himself. The plotter of the lots, before he lost title, had title in fee to the lots in question, and was entitled to the possession of the street to its center for any use not inconsistent with the public use. He was also entitled to the fee of the street, subject to the easement, which last named title would have been a full fee simple title in case of the abandonment or destruction of the public easement. As defendant in error and its grantors were in possession of the lots and the street for the limited use aforesaid, and were claiming the same title and the same rights exactly as the original owner and plotter owned and would have claimed if he had been in possession, adverse possession as to him and his heirs for twenty years would give title to his adverse holders to not only the lots but even to the street between them, including the fee thereof. A conveyance of a lot or lots by any of defendant in error's grantors after title had ripened in them by adverse possession conveyed the title to the middle of the street in question, subject only to the public easement, just the same as would a similar deed by the original owner.

The deed from the city to the predecessors in title of defendant in error, from whom defendant in error derived title to the lots, conveyed nothing as the city had nothing to convey, as a city obtains title to a street only in case of statutory dedication after the street is abandoned. It was the conveyance by the grantors of defendant in error, after they had obtained title by adverse possession, that gave title to defendant in error to the street. We know of no case that this court has decided on the exact point in question. The nearest in principle to this case is *Bellefontaine Improvement Co. v. Niedringhaus*, 181 Ill. 426, where we held that title to accretions in the Mississippi river in Illinois may be acquired by adverse possession of the adjoining land,

and said: "An accretion becomes a part of the land to which it is built, and follows whatever title covers the main land, whether it be title by deed or title by possession." An Illinois owner of land on the Mississippi river and in possession of the same is in constructive possession of the abutting land to the center or thread of the stream, but if another takes adverse possession he is not only out of possession of the dry land on the river but out of constructive possession of the abutting land in the river, and the adverse possessor holds the same possession that the owner would if he were in possession, including the land abutting and in the river.

The decree of the court is affirmed.     *Decree affirmed.*